| | |
|---|---|
| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |

United States District Court
Southern District of Texas
**ENTERED**
June 07, 2019
David J. Bradley, Clerk

| | | |
|---|---|---|
| *In re* | § | |
| | § | |
| Aztec Oil & Gas, Inc., *et al.*, | § | |
| | § | |
| Debtors. | § | Bankruptcy 16-31895 |
| | § | |
| | § | Adversary 16-03173 |
| Fort Apache Energy, Inc., *et al.*, | § | |
| | § | Civil Action H-17-1252 |
| Appellants, | § | |
| | § | |
| *versus* | § | |
| | § | |
| Short OG III, Ltd., *et al.*, | § | |
| | § | |
| Appellees. | § | |

## Opinion on Superior Title

1. *Background.*

The property in dispute is 112.174 acres in Tyler County, Texas. In 1971, H.G. Hrivnatz, Sr. – as trustee – acquired an undivided one-half interest in the oil, gas, and minerals. No trust agreement nor known beneficiaries exist. In 1974, H.G.H. conveyed the land, including the mineral interests, to three men who executed a deed of trust for H.G.H.'s benefit. The deed of trust foreclosed in 1976, reverting the land to H.G.H.

In May 1992, H.G.H. died. His will devised his estate: 50% to his wife, Vannie King Hrivantz, and 25% to each of his sons, Harry Hrivantz, Jr. and David A. Hrivantz "to be held in trust by my wife as long as she is alive."[1] This devised one-half of his ½ of the community property in the minerals to Vannie. Altogether, Vannie owned 75% of the minerals.

---

[1] Last Will and Testament of H.G. Hrivantz, Sr.

Vannie executed two durable powers of attorney – in 2003 and 2007 – granting Harry Jr. the authority to act as her attorney-in-fact. Neither of these powers is recorded in Tyler County.

2.  *Miller Lease.*

On January 1, 2009, Harry Jr. executed a lease to Miller Energy, Inc. He signed his name as "Harry G. Hrivnatz." The lease did not refer to the use or existence of powers of attorney. It also did not indicate that Harry Jr. was acting in anything other than his own individual capacity.

Resaca Resources, Inc. – operator of the wells – relies on the two powers of attorney in arguing that the powers vested Harry Jr. with the authority to act as Vannie's attorney-in-fact.

On January 1, 2009, when Harry Jr. signed the Miller lease, neither power had been recorded in Tyler County. Harry Jr. says that he was acting (a) individually and as trustee of the testamentary trust created by H.G.H.'s will; (b) as trustee of the Vannie revocable trust; and (c) as attorney-in-fact for both Vannie and David.

Fort Apache Energy, Inc., says that Harry Jr. had questionable authority at best to convey an interest on behalf of Vannie or David in the Miller lease. It also argues that the Miller lease is invalid because it did not lease their interests; Harry Jr. signed it as "Harry G. Hrivnatz" and the lease did not refer to Vannie, David, trusts, or powers of attorney.

3.  *Southern Star Lease.*

From November 2010 through early February 2011, Southern Star Exploration, LLC, and its agent, Fort Apache, searched property records preparing to lease a tract adjoining the Miller tract. They determined that the Miller lease was defective and that the mineral interest was not leased.

On February 10, 2012, Harry Jr. – as trustee of the testamentary trust, as trustee for the Vannie revocable trust, and attorney-in-fact for Vannie and David – signed the Southern Star lease. Fort Apache says that the Southern Star lease is valid because it was leased "from the Hrivantz family in all relevant capacities."

On that same day, Vannie executed a third power of attorney making Harry Jr. her attorney-in-fact. Southern Star promptly recorded the power of attorney.

Southern Star (a) ratified the lease on March 11, 2012; (b) assigned its leasehold to Fort Apache on April 12, 2012; and (c) recorded it on April 18, 2012. On May 12, 2014, and again on September 8, 2014, Fort Apache assigned working interests. All of Fort Apache's assignments are recorded.

4. *David Jacob "Jay" Hrivnatz.*

Jay Hrivnatz – a son of David A. Hrivantz and the administrator of his father's probate estate – says that neither lease binds his father because (a) David never signed the Southern Star lease and (b) David lacked the mental capacity to ratify it.

Resaca, the well operator, insists that David executed a power of attorney; however, Harry Jr. did not produce it because it is has been lost or destroyed, and it has not been recorded.

5. *Ratification of Miller Lease.*

During the pendency of an appeal before Texas's Ninth Court of Appeals, Keith Morris – administrator of Vannie's estate – ratified the Miller lease.

In exchange for the ratification, Resaca agreed to pay Vannie's estate 100% of previous uncashed royalty payments made for the Miller lease and 100% of all future royalty payments. It also made a one-time payment to the estate of $30,000.

6. *Trespass to Try Title.*

Short OG III, Ltd., says that Fort Apache has not pleaded its case with the requisite specificity for a trespass-to-try-title claim.[2] This claim is the "exclusive

---

[2] Tex. Prop. Code Ann. § 22.001(a) ("A trespass to try title action is the method of determining title to lands, tenements, or other real property").

-3-

method in Texas for adjudicating disputed claims of title to real property."[3] Short says Fort Apache and Southern Star did not meet Texas's pleading requirements[4] by not stating: (a) the amount of each plaintiff's and intervenor's undivided mineral interests; (b) Fort Apache's entitlement to possess the minerals; and (c) the date Short illegally entered the land and dispossessed Fort Apache from it.

To plead a trespass-to-try claim, Fort Apache must describe how it was entitled to the Hrivantz mineral interest. To do so, Fort Apache must specify (a) its interest in the land; (b) whether it had possession or was entitled to possession of the land – it does not have to prove *actual* possession, rather a strong inference that it was entitled to possession of the minerals; and (c) that Short and the other working interest owners illegally entered the land and dispossessed Fort Apache of the land. Fort Apache's complaint meets these requirements.

7. *Title.*

The language of the Miller and Southern Star leases articulate the parties' act. Use of a durable power of attorney in real property requires that an oil and gas lease be recorded with the county clerk in the county where the property is located.[5] An unrecorded instrument binds a subsequent purchaser who has notice of the instrument. An unrecorded power of attorney does not authorize the grantor to convey the property.[6]

The powers do not describe a particular mineral interest. Nothing shows that Harry Jr. signed the Miller lease as a representative of Vannie or that he intended to do

---

[3] *Texas Parks and Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 389 (Tex. 2011).

[4] *See* Tex. R. Civ. P. 783.

[5] Tex. Prob. Code § 489.

[6] Tex. Prop. Code Ann. § 13.001(b).

that. He leased the mineral interest for his own personal gain. Assuming that the powers granted Harry Jr. the authority to convey the mineral interest, they were not recorded in Tyler County. He simply had no right to lease the property. Because Harry Jr. had no authority to convey the interests, the Miller lease was void and could not have been ratified. Further, the Miller lease was executed in January 2009, and the attempted ratification in December 2014 – two years after the Southern Star lease was executed in 2012.

Fort Apache's rights were acquired between the void lease and ratification. Because Fort Apache was not a party to the Miller lease, it could not ratify it.

Fort Apache recorded all three powers that it held. When Harry Jr. signed the Southern Star lease, he had the power to act in real property, mineral, and royalty transactions. He had the authority to lease the minerals to Fort Apache.

8.  *Original Lease.*

Short says that the original Southern Star lease is missing from the land records. Fort Apache concedes that the only document recorded in Tyler County is the Memorandum of Oil, Gas, and Mineral Lease. Short imagines that Fort Apache deliberately lost or destroyed it. It also imagines that Fort Apache pieced together portions of the memoranda in an effort to forge the lease.

The Southern Star lease may either be (a) the actual writing or (b) counterparts meant to have the same effect by the person who executed it.[7] Fort Apache admits that the original lease no longer exists; however, it says the Southern Star lease is the original writing because its counterparts have the same effect as the original.

The lease was executed on February 10, 2012. A memoranda of this lease was also executed and recorded on the same day. It described the property and its primary term. Fort Apache discovered mistakes in the property description and corrected them. The corrections were incorporated into the original lease as

---

[7] Tex. R. Evid. 1001 (D); Fed. R. Evid. 1001(d).

(a) the date of conveyance from April 3, 1971, to April 2, 1971; (b) the volume reference from 227 to 277; and (c) W.B. McBride to W.B. McBride and wife.

Fort Apache recorded the Corrected Memorandum of Oil, Gas, and Mineral Lease. Harry Jr. ratified the lease that incorporated the corrections. Fixing the date, changing a number, and adding a word is not forgery. Fort Apache made minor corrections which did not change the substance of the lease.

9. *Conversion and Accounting.*

In state court, Resaca moved for summary judgment on all of Fort Apache's claims except accounting. The trial court granted summary judgment for Resaca, but the appellate court reversed because it found no support to prevent a co-tenant from seeking additional remedies.[8] Resaca did not appeal. As a result, this has become the law of the case and Resaca may not reassert this argument.[9]

Further, Resaca argues that the conversion and accounting claims are barred by limitations. Fort Apache filed its original petition in April 2012. In 2014, Fort Apache assigned part of its interest in the property to Southern Star. After the assignment, Southern Star sought an accounting for the transactions underlying Fort Apache's original 2012 petition. Southern Star's accounting claim relates to Fort Apache's 2012 petition and is not barred by limitations.

10. *Conclusion.*

Fort Apache has superior title to the Hrivantz mineral estate under the Southern Star lease.

The defendants's motions for partial summary judgment are denied. (46) (48) (50) (52) (61)

| | |
|---|---|
| Short OG III, LTD., | Resaca Resources, LLC, |
| Calvin Resources, Inc., | Chopper Dan Holdings, LLC, |

---

[8] *Fort Apache Energy, Inc. v. Resaca Res., LLC*, No. 09-14-00325-CV, 2016 WL 637985 (Tex. App. Feb. 18, 2016).

[9] *See U.S. v. Shoemaker*, 626 Fed. App'x 93, 96 (5th Cir. 2015).

| | |
|---|---|
| Hawley Investment Company, LLC, | Victor Hawley, |
| B.D. Gillentine, | Diane Hawley, |
| Keever OG, Inc., | Hawley Family Trust UAD 2-1-90, |
| Miller Energy, Inc., | Executrix, Estate of C. Wayne Miller, |
| Crow Partners, LTD., | Tommy R. Reid, |
| Alridge Energy Partners, LTD., | Sovereign Drilling, LTD., |
| Aldridge Oil & Gas, Inc., | James K. Shows, |
| Steve York, | Patrick Sumbera, |
| C. Wayne Miller, | Richard P. Wilkerson, |
| Patricia J. Miller, | WPTC Partners, LTD., |
| R.A. Oil & Gas, LTD., | Tasselfoot Management, LLC, |
| ANOIL Company, | Raw Monster Media, LLC, |
| ABOCO Investments, LLC, | Wyat Lautzenheiser, |
| Aspen Energy, Inc., | Dawn Lautzenheiser, |
| C.R. Bass, | CSI Energy, LP, |
| CTL Oil & Gas Corp., | Donna Azcuzy, |
| B.D. Gillentine, | and Ralph O'Connor |
| Philip M. Hawley, Jr., | |

will take nothing from Fort Apache.

Signed on June 7, 2019, at Houston, Texas.

Lynn N. Hughes
United States District Judge