United States District Court
Southern District of Texas
**ENTERED**
September 13, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Fort Apache Energy, Inc., et al., | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action H-17-1252 |
| | § | |
| Short OG III, Ltd., et al., | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are: (1) Short OG III, Ltd., and Calvin Resources, Inc.'s (Short OG) Motion for Entry of an Order Enforcing the Court's Prior Rulings and Dismissing Plaintiffs' Claims,[1] ECF No. 376; (2) Jay Hrivnatz's, Independent Administrator of the Estate of Vannie K. Hrivnatz (Estate), Amended[2] Motion for Leave to File First Amended Complaint,

---

[1] Also listed as a pending motion is a filing entitled "Sovereign Drilling, Ltd., C.R. Bass, and Aspen Energy, Inc.'s Combined Notice of Joinder in Short OG III, Ltd.[,] and Calvin Resources, Inc.'s Motion to Dismiss & Alternative Motion for Summary Judgment[.]" ECF No. 417. The opening paragraph of that filing states:

> "Sovereign Energy, Ltd., C.R. Bass, and Aspen Energy, Inc. [(the Sovereign Parties)] join in the *Motion for Entry of an Order Enforcing the Court's Prior Rulings and Dismissing Plaintiffs' Claims* (Dkt. 376) filed by [Short OG]]. The same rulings that bar Fort Apache . . . and all other claimants . . . from recovering against Short OG . . . bar any relief against the Sovereign [P]arties, Short OG['s] co-working-interest owners. To the extent an independent motion for summary judgment may be required, the Sovereign [P]arties move for summary judgment on the same grounds. Whichever procedural mechanism the Court prefers, the result is the same: dismissal with prejudice of all claims against the Sovereign [P]arties[.]"

ECF No. 417 at 1–2. The court considers this filing to be a joinder in Short OG's Motion for Entry of an Order Enforcing the Court's Prior Rulings and Dismissing Plaintiffs' Claims, ECF No. 376, and **DENIES AS MOOT** the alternative motion for summary judgment, ECF No. 417.

[2] The motion is titled as an *amended* motion for leave to amend, but the district court docket reflects no prior filing of a motion for leave to amend by Jay Hrivnatz. The last motion for

ECF No. 377; (3) Fort Apache Energy, Inc.'s[3] (Fort Apache) Motion to Reconsider Summary Judgment in Light of Revivor (ECF Nos. 351 and 352), ECF No. 379; (4) Fort Apache's Motion for Reconsideration of Order on Settlement Credit (ECF No. 353), ECF No. 396; and (5) Fort Apache's Motion for Order Directing Payment of Settlement Funds from Court's Registry, ECF No. 402.

The parties consented to the jurisdiction of the undersigned magistrate judge, and the district judge transferred the case to the undersigned for all further proceedings, including entry of final judgment. ECF Nos. 394, 407, 409.

Jay Hrivnatz's Amended Motion for Leave to File First Amended Complaint, ECF No. 377, is **DENIED**. Fort Apache's Motion to Reconsider Summary Judgment in Light of Revivor, ECF No. 379, is **DENIED**. Fort Apache's Motion for Reconsideration of Order on Settlement Credit, ECF No. 396, is **DENIED**. Short OG's Motion for Entry of an Order Enforcing the Court's Prior Rulings and Dismissing Plaintiffs' Claims, ECF No. 376, joined by the Sovereign Parties, ECF No. 417, is **GRANTED**. Fort Apache's Motion for Order Directing Payment of Settlement Funds from Court's Registry, ECF No. 402, is **DENIED** without prejudice.

---

leave to amend filed by the estate that the court can locate was filed in bankruptcy court by the former administrator of the estate in October 2020. *See Fort Apache Energy, Inc. v. Resaca Res., LLC*, Adv. No. 17-03303, ECF No. 95 (Bankr. S.D. Tex. Oct. 29, 2020). The court finds no indication that the bankruptcy judge ruled on the motion.

[3] Fort Apache is the agent for and authorized as operator to recover money damages for Southern Star Exploration, LLC, Ann Schuhardt Oil & Gas, LLC, ApB Oil, LLC, Fort Apache Energy Ventures 2002, Inc. Gold Fork Ranch, Lavanco Energy, Ltd., McBee Op. Co., LLC, Geoffrey R. Pike, Schuhardt Consulting Profit Sharing Plan, Stormy Night Ranch, Vecta Oil & Gas Ltd., and Verdad Oil& Gas Corp.

## 1. Background[4]

### A. Pre-Suit

This case concerns competing mineral leases to the Hrivnatz family's undivided one-half interest in 112.174 acres in Tyler County, Texas. When H.G. Hrivnatz, Sr., died in 1992, his will devised fifty percent of his share of the community estate to his wife, Vannie King Hrivnatz (Vannie), and twenty-five percent to each of his sons, Harry Hrivnatz, Jr., (Harry, Jr.) and David A. Hrivnatz to be held in trust by Vannie during her lifetime. Vannie held all executive rights in the property upon the death of H.G. Hrivnatz, Sr. Vannie executed two durable powers of attorney, one in 2003 and one in 2007, both of which granted Harry, Jr. the authority to act as Vannie's attorney-in-fact. Neither was recorded in Tyler County.

In January 2009, Miller Energy, Inc., (Miller) executed a three-year mineral lease with Harry, Jr. (the Miller Lease). Although nothing in the Miller Lease indicated that Harry, Jr. was acting in anything other than his individual capacity, Resaca, which eventually drilled a well on the land, later took the position that Harry, Jr. was acting as Vannie's attorney-in-fact under the 2003 and 2007 powers of attorney. The Miller Lease stated that it would continue beyond its three-year primary term as long as operations were conducted upon the land without cessation for more than ninety consecutive days.

While engaged in oil and gas exploration in Tyler County in late 2010 and early 2011, Southern Star Exploration, LLC,

---

[4] The general factual background in this section is taken from the 2016 state appellate decision, the federal district judge's prior opinions, and the presentations by the parties' counsel at the hearing before the undersigned on November 17, 2023. *See Fort Apache Energy, Inc. v. Resaca Res., LLC*, No. 09-14-00325-CV, 2016 WL 637985 (Tex. App.—Beaumont Feb. 18, 2016, no pet.); ECF Nos. 114, 351, 353, 431.

(Southern Star) and its agent, Fort Apache, researched the county records on the Miller Lease and concluded that Harry, Jr. did not have the authority to convey the mineral rights to Miller. Acting on that conclusion, Southern Star and Fort Apache began negotiating another mineral lease (the Southern Star Lease) with Harry, Jr., which covered the same acreage as the Miller Lease. In early 2011, as those negotiations were ongoing, Resaca took assignment of the Miller lease and drilled, spudded, and began operating a well under the Miller Lease. The Southern Star Lease became effective in January 2012. Harry, Jr. signed the Southern Star Lease in several capacities, including as Vannie's attorney-in-fact. Vannie contemporaneously executed a third power of attorney naming Harry, Jr. as her attorney-in-fact, and Southern Star recorded that power of attorney in the property records.

The Southern Star Lease stated that it would remain in force beyond the primary three-year term as long as operations were conducted with no cessation for more than ninety consecutive days. Fort Apache never operated on the land covered by the Southern Star Lease. Instead of commencing operations, Fort Apache attempted to negotiate a joint development agreement with Resaca, which never came to pass.

### B. State Court[5]

In April 2012, Fort Apache filed a lawsuit in state court against Resaca and the working-interest owners to determine the legal relations between Fort Apache and Defendants under the competing mineral leases and raising various claims, including equitable suit to quiet title; trespass to try title; mineral trespass; conversion and accounting; and money had and received. The

---

[5] The current status of the remaining parties and claims is summarized in the May 5, 2023 Joint Status Report. ECF No. 373.

former administrator of Vannie's estate joined as an interested party, and the working-interest owners counterclaimed seeking a declaration that the Miller Lease was valid and raising claims against Harry, Jr., including fraud and breach of warranty.

The parties filed motions for summary judgment. The state trial court denied Fort Apache's motion for summary judgment and granted the defendants' motions for summary judgment. The state trial court also severed any claims or defenses that were not decided by the court's final judgment into a new state case and abated those claims. Plaintiffs appealed the state trial court's final judgment to Texas's Ninth Court of Appeals in Beaumont. The severed case remained dormant in state court.

During the appeal, the former administrator of Vannie's estate settled its claims with the Defendants and ratified the Miller Lease in exchange for Resaca's payment to the estate of previous uncashed and future royalty payments and a payment of $30,000. The settlement was approved by the Harris County Probate Court Number 3 on January 15, 2015. ECF Nos. 386-3–386-5 (Settlement Agreement).

On February 18, 2016, the Ninth Court of Appeals issued its decision. Among other rulings, the appellate court reversed the trial court's grant of summary judgment in favor of Resaca on the effectiveness of the powers of attorney, on estoppel and after-acquired title, and on all of Fort Apache's claims other than accounting. In addition, the court of appeals affirmed the trial court's denial of Fort Apache's motion for summary judgment and remanded the case for further proceedings.

### C. Federal Court

On April 13, 2016, Aztec Oil & Gas, one of the working interest owners named as a defendant in the case, filed for bankruptcy. The adversary proceeding commenced on July 11,

2016, upon removal to the Bankruptcy Court for the Eastern District of Texas. The Eastern District transferred the case to this district on August 1, 2016. The remaining state case was also removed. Both cases proceeded before the bankruptcy court in this district. Fort Apache moved for injunctive relief, asking the bankruptcy court to order that the production revenue be put into the court's registry. The bankruptcy judge granted the motion after a bench trial, and Resaca started depositing production revenue into an escrow account. The bankruptcy judge also granted Defendants' motions to dismiss. Fort Apache appealed the dismissal order to the district court, and the entire case landed in district court upon withdrawal of the reference for the remainder of the case.

On June 7, 2019, the district judge entered an opinion resolving in favor of Fort Apache the dispute over superior title to the Hrivnatz family's mineral estate. ECF No. 114. The district judge denied Defendants' motions for partial summary judgment. *See id.* The court found that Fort Apache's trespass-to-try claim was properly pleaded, that the Miller Lease and its ratification are void,[6] and that the Southern Star Lease is superior. *See id.* On July 17, 2019, Short OG filed a motion for reconsideration and argued, among other things, that "the Southern Star [L]ease expired on its own terms because Fort Apache never conducted or even intended to commence operations on the land and could not rely on Defendants' operations to extend the lease." ECF No. 118 at 2–3. In October 2019, as part of a settlement with Harry, Jr., Fort Apache, Harry, Jr., and the estate of David Hrivnatz (not Vannie's Estate) sought to ratify the Southern Star lease. ECF No. 379-1.

---

[6] As will be discussed below, the district judge did not consider whether the 2015 settlement agreement, which included the ratification, also granted a new mineral lease.

On February 13, 2020, the district judge reconsidered and confirmed its opinion that Fort Apache had superior title under the Southern Star lease. ECF No. 158. On July 2, 2020, Short OG filed a second motion for reconsideration of the opinion on superior title. ECF No. 186.

Meanwhile, Plaintiff and other defendants engaged in settlement efforts and agreed to dismissals of multiple claims and defendants. *See, e.g.,* ECF Nos. 209–220. In May 2021, Jay Hrivnatz, Vannie's grandson, became the administrator of Vannie's estate. *See* ECF No. 323.

In July 2022, the district judge entered several opinions. The court found, in favor of the estate, that the Southern Star Lease expired in 2015 for failure to comply with the continuous operations provision of the lease and that, when the lease expired, the land reverted to the administrator of Vannie's estate.[7] ECF No. 351. The court found that Fort Apache's attempt to extend the primary term by ratifying the Southern Star Lease in 2019 was not effective because Harry Jr. and David's estate did not have authority to convey the minerals. *Id.* The court concluded that, "[b]ecause the Miller lease is void and the Southern Star lease has expired, the administrator holds legal title and the right to dispose of the property." *Id.* The court also denied Fort Apache's motion for summary judgment on good faith trespass. *Id.* The court stated that Fort Apache's "good faith trespass claim fails." *Id.*

In a separate order, the court granted Short OG's Motion to Apply Settlement Credits. ECF No. 353. The court concluded that Fort Apache was "owed production revenue on the land for the

---

[7] Recall that the Estate had, with the approval of Harris County Probate Court Number 3, settled with Defendants in 2015 and ratified the Miller lease. Thus, the Estate's position at this point was that it had leased the mineral estate to Defendants after the Southern Star lease expired and the land had reverted to the Estate.

three years that it was a valid co-tenant [under the Southern Star lease]." *Id.* at 3. Because Fort Apache had received in settlements from co-defendants more than it was entitled to under the lease, it had "received more than its share," *id.*, and Short and Calvin "have nothing left to give Fort Apache." *Id.* at 4. In another order, the court required that the production revenue be deposited in the court's registry and ruled that distribution of the settlement payments was premature. ECF No. 354.

After the court entered those rulings, the case went cold. At that time, no party filed for reconsideration of any of the district judge's July 2022 orders. The docket reflects no activity for seven months, at which time, the case was reassigned to another district judge on February 13, 2023. *See* ECF No. 355. The reassignment apparently spurred the parties back into action. A month after the reassignment, on March 14, 2023, the Hrivnatz family entered an agreement entitled "Revivor, Ratification and Amendment of Oil, Gas and Mineral Lease" (Revivor) with Southern Star and other entities as lessees. ECF No. 379-1. That instrument purports to revive the Southern Star lease back to January 13, 2012, with an expiration date in 2026. It also deletes the continuous operations clause, the violation of which caused the Southern Star lease to expire in January 2015.

On March 21, 2023, the district court held a status conference. *See* Min. Entry Dated Mar. 21, 2023. Among other things, the court ordered the parties to file a status report "listing active and inactive parties, live claims remaining, and a proposed schedule." *Id.* On May 5, 2023, the parties filed an agreed motion to withdraw the reference to bankruptcy court and an agreed motion to consolidate the cases, both of which the district judge signed. *See* ECF Nos. 374–375. The parties also filed a joint status report in which Fort Apache argued that the Revivor "negates" the

July 2022 rulings (ECF Nos. 351–353). ECF No. 373 at 3. Plaintiffs reported that they would be filing motions to address that issue and others. *Id.*

More than four months later, in late September 2023, the parties began filing the pending motions. In November 2023, on consent of all parties, the district judge transferred the case to the undersigned for all further proceedings, including entry of final judgment. ECF No. 409. At that time, the court's registry held more than $700,000.

## 2. *Discussion*

### A. *Motion for Leave to File First Amended Complaint*

On September 26, 2023, Jay Hrivnatz, as administrator of Vannie's estate, filed a motion for leave to amend under Rule 15 stating that "there is no current pleading deadline or trial setting." ECF No. 377 at 7. On the court's review of the district court docket, that appears to be the case. The docket also reflects that, during the seven years in district court, the parties have focused primarily on discovery, dispositive motions, and settlement negotiations. *See, e.g.,* ECF Nos. 27, 32, 106, 136, 159, 194, 266, 318–19. However, despite the age of this case and the progression of litigation well beyond the pleading stage, Rule 15 rather than the stricter Rule 16 applies to Jay Hrivnatz's motion for leave to amend. *See Fahim v. Marriott Hotel Servs., Inc.,* 551 F.3d 344, 348 (5th Cir. 2008) (stating that Rule 16 governs amendment only after a scheduling order's deadline to amend has expired).

Under Rule 15(a), courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Though that's a generous standard, 'leave to amend can be properly denied where there is a valid justification.'" *Robertson v. Intratek Comput., Inc.,* 976 F.3d 575, 584 (5th Cir. 2020) (quoting *Carroll v. Fort James Corp.,* 470 F.3d 1171, 1175 (5th Cir. 2006)). "Valid justifications

include undue delay, bad faith, dilatory motive . . . [and] 'whether the facts underlying the amended complaint were known to the party when the original complaint was filed.'" *Id.* (quoting *In re Southmark Corp.*, 88 F.3d 311, 316 (5th Cir. 1996)) (citing *Cantú v. Moody*, 933 F.3d 414, 424 (5th Cir. 2019)). Courts may also consider a plaintiff's "repeated failure to cure deficiencies by [previous] amendments, undue prejudice to the opposing party, and futility of the [proposed] amendment." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (citing cases).

Here, undue delay and undue prejudice justify the court's denial of leave to amend. Amendment would also be futile. Jay Hrivnatz "seeks a declaratory judgment determining the parties' respective rights to production revenues since the expiration of the Southern Star Lease and in light of the prior settlement agreement." ECF No. 377 at 5. As reason for the amendment, Jay Hrivnatz explains:

> Pursuant to this Court's rulings on summary judgment that the Southern Star Lease is expired, Defendants have received a windfall of several million dollars in hydrocarbon production that they are not entitled to. Judge Hughes' order contemplated this very result, and [Jay Hrivnatz] seeks to redress this unconscionable circumstance through this amended complaint.

*Id.* at 1. The motion states that the combined effect of the July 2022 opinion on the expiration of the Southern Star Lease and the June 2019 opinion on superior title was "that all production revenue since 2015 has been paid to parties without any legitimate interest in those proceeds." *Id.* at 3. In the court's view, the motion is premised on the notion that the January 19, 2015 Settlement Agreement and the attached Ratification of Oil and Gas Lease, ECF Nos. 386-3, 386-4, has no legal effect. The court will address

10

that issue below. In any event, the facts giving rise to the amendment have been known to Jay Hrivnatz and the Estate for quite some time.

As far back as March 6, 2020, Keith Morris, who at the time was the temporary administrator of Vannie's Estate, filed a status report after the court entered its 2019 opinion on superior title. Morris argued for the very conclusion that the court later reached in its July 2022 opinion on the expiration of the Southern Star Lease. Morris argued that the Southern Star Lease failed for nonproduction during the stated term of the lease and that Morris, as temporary administrator, was thus "vested with ownership and control" over the minerals Vannie owned at the time of her death. ECF No. 160 at 7. Morris also argued that the October 2019 attempted ratification of the Southern Star Lease failed because, at that time, legal title to the minerals in Vannie's Estate were already vested in Morris, who did not ratify the lease. *Id.* at 7–8. Moreover, recall that it was Morris who, as administrator of the estate, entered into the January 19, 2015 Settlement Agreement, which purported to revive the Miller lease and required Defendants to pay future royalties pursuant to the terms of the Miller lease. ECF Nos. 386-3, 386-4.

In September 2020, Morris put his arguments into motion form, seeking summary judgment that the Southern Star lease had expired. *See* ECF No. 230. In October 2020, Morris again demonstrated his knowledge of the factual and legal basis of the claims the estate now seeks to add. *See Fort Apache Energy, Inc. v. Resaca Res., LLC*, Adv. No. 17-03303, ECF No. 95 (Bankr. S.D. Tex. Oct. 29, 2020). At that time, Morris sought leave in the adversary proceeding in bankruptcy court to amend his counterclaims and cross-claims against Fort Apache based on the same facts and legal theories underlying the proposed amended

complaint.[8] *See id.* Morris sought declaratory judgment "that the Southern Star Lease is not an effective, binding lease as to the Hrivnatz Interest that Vannie owned outright" and "that the Ratification of the Southern Star Lease is invalid and not binding as to Morris." *See id.*, ECF No. 95-1 at 6–7. The motion for summary judgment was later withdrawn when Jay Hrivnatz took over as administrator in May 2021. *See* ECF No. 325. The reason given was that new counsel was reviewing the estate's pleadings and "intend[ed] to withdraw all claims against those with whom the Estate is now aligned." *Id.* at 1.

For years, the Estate has had all the facts it needed to amend its complaint. It has failed to provide a suitable explanation for the years-long delay in pursuing the proposed claims. The amendment is simply too late. *See Nilsen v. City of Moss Point, Miss.*, 621 F.2d 117, 121–22, (5th Cir. 1980) (affirming the district court's denial of a motion to amend because the plaintiff delayed close to three years between accrual of the cause of action and the attempted amendment and more than one year after the defendants had moved for summary judgment). In *Nilsen*, the court recognized that the movant's lack of diligence warranted the denial of leave to amend and placed the burden on the movant "to show that the delay 'was due to oversight, inadvertence, or excusable neglect.'" *Id.* at 122 (quoting *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967)); *cf. Cantu v. State Farm Lloyds*, No. 7:14-CV-456, 2016 WL 4866111, at *1–2 (S.D. Tex. Sept. 15, 2016) (denying leave to amend when the movant knew the underlying facts at the inception of the suit but waited until after the defendant filed a motion for summary judgment to seek leave to amend).

---

[8] The bankruptcy docket does not reflect that the court ever ruled on that motion.

Hrivnatz has not argued that the delay was due to oversight, inadvertence, or excusable neglect or any other valid justification. The delay appears to be attributable solely to the fact that the Estate has belatedly changed its position on the direction it should take in this litigation.

Although the court finds the undue delay alone is a valid justification for denying leave to amend, the court also finds that allowing amendment would cause Defendants undue prejudice. Since the court's rulings, the parties have settled many claims and dismissed multiple parties. The parties have engaged in significant discovery. As of the status conference on April 13, 2023, there were no pending motions in this case. ECF No. 364 at 7. The court ordered the parties to file a status report, which they did on May 5, 2023. *See* ECF No. 373. The report stated, "The Parties will spend the next several months engaged in motion practice and discovery relating to damages and believe this case will be ready for jury trial in late 2023." *Id.* at 4. In other words, the parties agreed that they were focused only on damages with an eye toward trial sometime in the subsequent seven months. Jay Hrivnatz filed the motion for leave to amend four months later, which, in addition to being based on facts and legal theories known for years, would require additional discovery and would further delay the conclusion of the case. Those consequences alone would prejudice Defendants.

Finally, addition of claims in reliance on the validity of the 2023 ratification of the Southern Star lease would be futile. As the court concludes below, the ratification is ineffectual because the 2015 settlement agreement granted a new, intervening mineral lease on the same land. When the Southern Star lease expired in 2015, title reverted to the Estate. A week later, the Estate leased

13

the mineral estate back to Defendants. The 2023 Revival was therefore ineffective to vest title in Fort Apache.

The motion for leave to amend is **DENIED**.

### B. Plaintiffs' Motions for Reconsideration

### i. Legal Standard

Although the Rules do not provide for the filing of motions for reconsideration by name, Rule 54(b) states that a court's order or other decision:

> that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

See also *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004) (recognizing that the Rules do not specifically allow motions for reconsideration). Rule 54(b) "permits the district court to reconsider and reverse its decision for any reason it deems sufficient." *Ryan v. Phillips 66*, 838 F. App'x 832, 836 (5th Cir. 2020) (quoting *McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018) (internal quotation marks omitted). Courts have discretion to decide whether to grant a motion for reconsideration of an interlocutory order. *Deeds v. Whirlpool Corp.*, No. CIV. A. H-15-2208, 2017 WL 3437772, at *10 (S.D. Tex. Aug. 10, 2017), *aff'd*, 764 F. App'x 407 (5th Cir. 2019); *see also Vlasek v. Wal-Mart Stores, Inc.*, Civil Action No. H-07-0386, 2008 WL 167082, at *1 (S.D. Tex. Jan. 16, 2008) ("Motions to reconsider interlocutory orders are left to the court's discretion so long as not filed unreasonably late.").

Nevertheless, "[t]he court should only reconsider a prior ruling when 'the moving party has presented substantial reasons

14

for reconsideration.'" *Fed. Ins. Co. v. C.D. Henderson Inc.*, No. A-07-CA-982-SS, 2009 WL 10670098, at *2 (Bankr. W.D. Tex. Feb. 20, 2009) (quoting *Anderson v. Red River Waterway Comm'n*, 16 F. Supp. 2d 682, 683 (W.D. La. 1998), *aff'd*, 231 F.3d 211 (5th Cir. 2000)). Drawing on the considerations underlying Rules 59 and 60, courts analyze factors such as: "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *Deeds*, 2017 WL 3437772, at *12; *see also Washington ex rel. J.W. v. Katy Indep. Sch. Dist.*, 403 F. Supp. 3d 610, 617 (S.D. Tex. 2019).

Also relevant to the undersigned's decision whether to reconsider the challenged decisions is the principle of judicial comity. "[W]hen a district judge has rendered a decision in a case, and the case is later transferred to another judge, the successor should not ordinarily overrule the earlier decision." *Perforaciones Maritimas Mexicanas S.A. de C.V. v. Seacor Holdings, Inc.*, Civil Action No. 4:05-cv-419, 2008 WL 7627805, at *1 (May 1, 2008) (quoting *Loumar, Inc. v. Smith*, 698 F.2d 759, 762 (5th Cir. 1983). "A judge should hesitate to undo his own work. Still more should he hesitate to undo the work of another judge. But until final judgment or decree there is no lack of power, and occasionally the power *may* properly be exercised." *Loumar*, 698 F.2d at 762 (emphasis added).

### ii. The Motions for Reconsideration are Untimely and the District Judge's Rulings Were Correct When they were entered.

Plaintiffs' pending motions for reconsideration should be denied for several reasons. First, both motions for reconsideration were filed unreasonably late. The opinion and orders that Plaintiffs ask the court to reconsider were entered on July 21,

2022. *See* ECF Nos. 351–353. Fort Apache's motion for reconsideration of summary judgment in light of the Revivor, ECF No. 379, was filed on September 29, 2023, fourteen months after the court's opinion on the expiration of the Southern Star Lease and six months after the Revivor itself was executed and recorded. ECF No. 379-1. The motion for reconsideration of the order on settlement credit was filed November 14, 2023, sixteen months after the opinion and order on settlement credits. *See* ECF No. 396. Second, Plaintiffs do not argue any intervening change in controlling law. Third, Judge Hughes's decisions were neither clearly erroneous, nor did they create a manifest injustice.

### iii. The New Evidence Does not Change the Analysis.

Plaintiffs claim that "new evidence not previously available" warrants reconsideration of the court's ruling on the expiration of the Southern Star lease. The evidence that Plaintiffs present is the 2023 Revivor of the Southern Star lease. ECF No. 379-1. Again, the Revivor was not available at the time of the court's ruling because it did not exist. The district judge's ruling was correct based on all the evidence then in existence.

In any event, the 2023 Revivor does not change anything because, by virtue of the 2015 Settlement Agreement, the Estate had granted Defendants a new lease going forward. On January 19, 2015, the Administrator of the Estate settled with Defendants after the Harris County Probate Court Number 3 held a hearing and granted settlement authority. ECF No. 386-5. The Settlement Agreement required the Estate to ratify the Miller lease. ECF No. 386-4 at 3. The Ratification was attached as an exhibit to the Settlement Agreement. ECF No. 386-3. The Ratification states that the Administrator of the Estate agreed to "CONFIRM, RATIFY and ADOPT the [Miller] Lease, **_and_** GRANTS, LEASES and LETS to the lessee" all interests in the lands covered by the

previous Miller lease. ECF No. 386-3 at 2 (emphasis added; capitalization in original).

The Settlement Agreement also required Defendants to distribute to the Estate 100% of all previous uncashed royalty payments made pursuant to the Miller lease and to pay to the estate "100% of all future royalty payments made pursuant to the Miller Lease." ECF No. 386-4 at 3. Defendants further agreed to pay $30,000 in cash to the Estate. *Id.* Importantly, the Settlement Agreement contains a severability clause stating that if any part of the settlement agreement were found to be "illegal, invalid, or otherwise unenforceable . . . such provision shall be fully severable and shall in no way affect the validity or enforceability of this Settlement Agreement or any other provision of this Settlement Agreement." *Id.* at 5–6.

Defendants argue that the Ratification created a new lease. Fort Apache and the Estate argue that the Ratification only ratifies the Miller lease, and because the Miller lease is void, so is any attempted ratification of it. Fort Apache and the Estate rely heavily on the July 22, 2022 Opinion on Partial Summary Judgment, in which Judge Hughes held that "the 2015 ratification is void," and that "When the [Southern Star] lease expired in 2015 for lack of production, the land reverted to the Administrator of Vannie's estate." ECF No. 351 at 6. The court also stated, using language in the present tense, that "Because the Miller lease is void and the Southern Star lease has expired, the administrator holds legal title and the right to dispose of the property." *Id.*

A few comments are warranted with respect to what Judge Hughes decided and what he did not. Judge Hughes's opinion on summary judgment resolved only whether the Southern Star lease had expired, and whether Ft. Apache's good faith trespass claim should proceed. ECF No. 351 at 9. Discussion of whether the 2015

and 2019 ratifications were effective was necessary only to resolve whether those ratifications would retroactively impact expiration of the Southern Star lease. The 2015 Ratification was ineffective to revive the Miller lease because the Miller lease was void. The 2019 ratification was ineffective because the people who signed it had no authority. The signatories had no authority because, upon expiration of the Southern Star lease, title had reverted to the Estate, not to its beneficiaries. The analysis did not require any consideration of whether the 2015 settlement agreement operated to create a new lease going forward. Judge Hughes did not consider that question at all.

The undersigned agrees with Judge Hughes that, upon expiration of the Southern Star lease, the administrator immediately held legal title and the right to dispose of the property. The court also agrees with Judge Hughes that the 2015 settlement agreement and accompanying ratification could not revive the Miller lease, which was void from its inception. It is a separate question whether the Settlement Agreement and the attached Ratification created a new lease from the effective date of the Settlement Agreement.

A lease, like any other contract, should be read to "ascertain and give effect to the true intentions of the parties" and those intentions are determined "by considering all of the provisions of the lease and by harmonizing, if possible, those provisions which may appear to be in conflict." *Conquistador Petroleum v. Chatham*, 899 S.W.2d 439, 442 (Tex. App.—Eastland 1995, writ denied). If an instrument is open to two equally plausible constructions, effect will be given to the construction that renders the agreement valid rather than void. *Id.* Under Texas law, when a contract implements multiple agreements, one of which is unenforceable as void, the court must consider whether the void provision can be

severed, and the remainder of the contract enforced. *McFarland v. Haby*, 589 S.W.2d 521, 524 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.).[9] "The intent of the parties, as evidenced by the language of the contract, governs its severability." *Id.* (finding the contract not severable because the deceased would not have signed it knowing that provisions governing the disposition of her estate would not be enforced); *Wilson v. Teacher Ret. Sys. of Tex.*, 617 S.W.2d 329, 332 n.3 (Tex. Civ. App.—Amarillo 1981, no pet.) (explaining that a provision that the parties explicitly made divisible may be separated from unenforceable provisions and thus be enforced).

Because the Ratification was made an exhibit to the Settlement Agreement, the two must be read together. By its terms, despite its title, the Ratification sought to do two things— ratify the Miller lease *and* grant a new lease going forward. ECF No. 386-3 at 2. The Settlement Agreement confirms this. It required payment of back royalties and a one-time payment of $30,000, as well as royalty payments going forward. ECF No. 386-4 at 3.

The parties' agreement to re-establish the Miller lease as if it had been executed in 2009 by a person with authority is void. As all parties seem to recognize, a lease that is void to begin with cannot later be revived or ratified. The plain wording of the Settlement Agreement and the Ratification also demonstrates that the parties intended to allow Defendants to operate on the land

---

[9] Similarly, "'It is the settled law of this state that our courts will neither aid in the enforcement of an illegal executory contract, nor relieve from an illegal contract, a party who has executed it.'" *Hermann v. Lindsey*, 136 S.W.3d 286, 290 (Tex. App.—San Antonio 2004, no pet.) (emphasis omitted) (quoting *Morrison v. City of Fort Worth*, 155 S.W.2d 908, 909 (Tex. 1941)). Rather, the policy is to leave the parties to such a contract in the position which they have placed themselves. *Id.* at 291. Courts generally refuse to enforce the parts of a contract that are contrary to the law, while "leaving the remaining transaction to stand as executed by the parties." *Id.* (finding a deed to real property enforceable even though it illegally reserved certain water rights to the seller).

and pay the Estate royalties going forward under the terms of the Miller lease. Fort Apache and the Estate have presented no facts to show that this did not happen or that it was not the parties' intent at the time. It is hard to imagine how the parties could have agreed to a royalty arrangement without contemplating a lease. It is also hard to imagine that Defendants would have agreed to settle their claims with the Estate and agreed to pay royalties without entering into a lease. Absent a lease, Defendants would be entitled to nothing more than their operating costs. To conclude that the Settlement Agreement did not create a lease going forward would be an absurd result.

No party has shown that the Estate lacked authority to enter a new lease on the effective date of the Settlement Agreement. *Cf.* ECF No. 351 at 6 ("When the lease expired in 2015 for lack of production, the land reverted to the Administrator of Vannie's estate."). No party has asserted that such a lease is void for lack of a property description or any other requirement of an oil and gas lease in Texas.

Ft. Apache and the Estate argue only that the attempt to revive or ratify the Miller lease was ineffectual and therefore the entire lease is void. They do not address the severability clause in the Settlement Agreement, and do not address the interplay between the Settlement Agreement and the Revivor. Fort Apache's and the Estate's arguments divorce the Revivor from the Settlement Agreement of which it is part. There is no question that the Estate and the Defendants sought to end their litigation by allowing continued operations under a lease with royalties under the same terms as the Miller lease.

By virtue of the 2015 Settlement Agreement, the Estate had granted Defendants a new lease going forward. Once the 2015 Settlement Agreement was executed, the Estate no longer had any

title to pass and could not have later revived the Southern Star lease. *Day & Co., Inc. v. Texland Petroleum, Inc.*, 718 S.W.2d 384, 390-91 (Tex. App.—Amarillo 1986), *aff'd*, 786 S.W.2d 667 (Tex. 1990). Because the Estate had leased the Minerals back to Defendants in 2015, it lacked authority to revive the Southern Star lease in 2023. The Revivor does not have any legal or factual impact on the decisions that Fort Apache seeks to have the court reconsider.

### iv. The Motion for Summary Judgment on Expiration of the Southern Star Lease was Properly Before the Court.

Plaintiffs also argue that the motion for partial summary judgment on the expiration of the Southern Star Lease was not properly before the court. They argue that the original motion was filed and subsequently withdrawn by Vannie's estate and Short OG never properly joined the motion. *See* ECF No. 379 at 2. Plaintiffs argue that the district judge's "unexpected ruling on lease termination (unprompted by any pending motion for summary judgment at the time) [was] contrary to the intent of the Hrivnatz family . . . and Fort Apache . . ., who [had] resolved all claims between them and agreed that the Southern Star Lease [was] still in effect." *Id.* at 3. The court disagrees.

In their response to the original motion for partial summary judgment, Plaintiffs acknowledged that, "[t]he Administrator *join[ed]* Short OG . . . who argue[d] that because Fort Apache did not physically go out and drill a second well . . ., the Southern Star Lease expired." ECF No. 255 at 9. Moreover, the court ordered Fort Apache to file a "two-page rebuttal to Short OG's claim that the Southern Star Lease expired" and allowed Short OG an opportunity to reply. ECF No. 273 at 1. On November 19, 2020, Fort Apache filed its "Rebuttal of Defendants' Expiration

Argument." *See* ECF No. 274. On November 23, 2020, Short OG filed its reply. *See* ECF No. 277. Moreover, in a Joint Status Report filed on January 8, 2021, the parties stated, "[T]he Parties submitted two-page briefs regarding the expiration of the Southern Star Lease . . . . The Court's decision on this issue will inform the next steps to advance the litigation, including the scope of discovery and issues for trial." ECF No. 282 at 2. Defendants' Status Report filed on April 30, 2021, states, "At the last hearing, the Court stated that the next issue it would take up is the expiration of the lease." ECF No. 318 at 2. A month later, Jay Hrivnatz, as the new administrator of Vannie's estate, filed a notice of withdrawal of its motion on the expiration of the Southern Star Lease. ECF No. 325. Short OG did not join Jay Hrivnatz's withdrawal.

In his decision, the district judge criticized Short OG for not formally filing a motion for joinder but concluded that Fort Apache was on notice of Short OG's joinder, and therefore treated Short OG's supplemental brief as a joinder. ECF No. 351 at 4. The district judge acknowledged that "[t]he expiration of the lease is critical because it affects the outcome of damages and settlement credits." *Id.* Because all parties were aware of Short OG's stake in the motion, because Short OG did not join the administrator's withdrawal, and because the motion remained pending on the court's docket, the court's ruling on the motion does not appear to be unexpected in any way. Plaintiffs did not react as though they were surprised by the ruling as they did not file for reconsideration until fourteen months after it was issued and several months after creating the Revivor.

The district judge's rulings on the expiration of the Southern Star Lease and the settlement credits were factually and legally

correct. The Revivor does not alter the earlier conclusions. The motions for reconsideration are **DENIED**.

### C. Motion to Dismiss

Short OG, joined by the Sovereign Parties, requests that the court "enforce its prior rulings by issuing an order dismissing all of Plaintiffs' claims against [m]ovants." ECF No. 376 at 3. As discussed above, the court's prior rulings remain the law of the case. To recap the court's rulings as supplemented by the undersigned: (1) the Southern Star Lease expired in January 2015 at the end of its primary term; (2) the Estate leased the minerals back to Defendants when it settled with them in 2015; (3) Fort Apache offered no evidence on summary judgment "to show that the producer dispossessed it from the land;" (4) the good faith trespass claim fails; (5) Fort Apache held superior title to the mineral estate from the execution of the Southern Star Lease in 2012 until the lease expired in 2015; (6) Fort Apache "is owed production revenue on the land for the three years that it was a valid co-tenant[;]" and (7) based on the one-satisfaction rule, Fort Apache received more than its share through settlements and is not entitled to anything more. ECF Nos. 114; 351–353. The court now addresses whether these prior rulings resolve all of Plaintiffs' claims.

The entities collectively renamed in this opinion as Short OG and Sovereign Parties are working-interest owners. Plaintiffs brought the same claims in "Plaintiffs and Intervenors' Complaint" and "Complaint of Southern Star Exploration, LLC" filed in the adversary proceeding. *See Fort Apache Energy, Inc. v. Resaca Res., LLC*, Adv. No. 17-03173, ECF Nos. 39, 85 (Bankr. S.D. Tex. Oct. 24 and Nov. 18, 2016). The claims are: (1) equitable suit to quiet title; (2) declaratory judgment for possession and ownership of a leasehold interest under the Southern Star Lease;

(3) trespass to try title; (4) slander of title; (5) mineral trespass; (6) conversion/accounting; (7) money had and received; and (8) tortious interference with the Southern Star Lease. *Id.*

Short OG and the Sovereign Parties argue that application of the one-satisfaction rule bars all of Plaintiffs' claims. Short OG and the Sovereign Parties alternatively argue that the claims are precluded by the court's rulings that the Southern Star Lease expired at the end of its primary term and that the trespass claim fails. The court agrees on both fronts.

The court held that "Short OG III and Calvin Resources prevail on the application of settlement credits. They have nothing left to give Fort Apache." ECF No. 353 at 4. In reaching that conclusion, the court explained, "As a co-tenant, Fort Apache would be entitled to 50% of production revenue minus royalties and operating expenses. The net production of proceeds is calculated with a 26.75% royalty that has already been paid to Hrivnatz lessors. Exhibit A shows production proceeds month-by-month that total $4,739,057.69 after expenses." ECF No. 353. The court rejected Fort Apache's challenges and concluded that the most Fort Apache was owed was $5,749,965, which was less than the settlement of $7.2 million. *Id.* Fort Apache is not entitled to any more damages.

The court's prior rulings that the Southern Star Lease expired at the end of its primary term and that Defendants were not liable for trespass of the common mineral estate preclude recovery of additional damages for the claims Fort Apache brought against Defendants. *Cf.* Tex. Prop. Code Ann. § 22.01 (defining trespass to try title); *Onabajo v. Household Fin. Corp. III*, 795 F. App'x 258, 260 (5th Cir. 2020) (listing elements of quiet title); *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 212 (5th Cir. 2018) (listing elements of conversion); *Alviar v. Lillard*, 854 F.3d

286, 289 (5th Cir. 2017) (listing elements of tortious interference with a contract); *Wells Fargo Bank, N.A. v. BMW Welding USA, Inc.*, Civil Action No. 4:19-CV-1311, 2021 WL 1137261, at *2 (S.D. Tex. Feb. 11, 2021) (listing elements of money had and received); *Davis v. Countrywide Home Loans, Inc.*, 1 F. Supp. 3d 638, 645 (S.D. Tex. 2014) (discussing slander of title). Based on the court's rulings, Plaintiffs also are not entitled to a declaratory judgment for possession and ownership of a leasehold entity under the Southern Star Lease.

In response to Short OG's motion, Plaintiffs do not argue that their claims are viable under the court's prior rulings. Instead, they argue that the motion is "improper and premature because there are several pending issues." The court has now resolved the motions that Plaintiffs cite as pending. Plaintiffs have failed to explain why, given the court's current rulings, all their claims against Defendants should not be dismissed.

Because the court's prior rulings decided all issues necessary to resolve Plaintiffs' claims against Short OG and the Sovereign Parties, Plaintiffs' claims against Short OG and the Sovereign Parties' are **DISMISSED**.

### D. Motion for Payment of Settlement Funds

Fort Apache seeks an order directing payment of $416,521.37 in production revenues held in the court's registry, claiming assignment in connection with prior settlements of "right, title, and interest to .58009720 of the funds deposited by Resaca Resources in the Court's registry." ECF No. 402.

In July 2022, the court entered the "Order to Modify Preliminary Injunction" finding that the settling defendants assigned their rights to the production revenues to Fort Apache but that Fort Apache had not yet prevailed on its claims and therefore distribution of the settlement payments was premature.

ECF No. 354 at 3. The current motion for disbursement is denied without prejudice to refiling after the parties have briefed the court on the remaining claims and parties and the court has had the opportunity to assess the status of the case.

### 3. Conclusion

Jay Hrivnatz's motion for leave to amend is **DENIED**; the motions for reconsideration of the court's granting of summary judgment on the expiration of the Southern Star Lease and the court's denial of settlement credits are **DENIED**; the motion to dismiss is **GRANTED**; and the motion for payment of settlement funds is **DENIED** without prejudice.

By September 30, 2024, the parties shall file a joint status report describing each party's view as to what parties and claims remain in the case in light of this Order. No motions shall be filed before then without leave of court.


Signed at Houston, Texas on September *13*, 2024.


_____
Peter Bray
United States Magistrate Judge